```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
DENIS GRIFFITH,                                                  :
                                                                 :
                           Plaintiff,                            :      REPORT AND
                                                                 :      RECOMMENDATION
                  -against-                                      :
                                                                 :      16-CV-3442 (CBA)(PK)
STERLING-GRANT INC. and EVERITA                                  :
GRANT,                                                           :
                                                                 :
                           Defendants.                           :
---------------------------------------------------------------- X
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Denis Griffith ("Plaintiff") brings this action against Sterling-Grant Inc. and Everita Grant (together, "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the New York Labor Law ("NYLL") §§ 650 *et seq.*; and the New York Codes, Rules and Regulations ("NYCRR"). Before the undersigned, on referral from the Honorable Carol Bagley Amon, is a Stipulation of Settlement for review pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied* 136 S.Ct. 824 (2016). (*See* Defendants' Notice of Motion, Dkt. 22; Referral Order dated Jan. 24, 2017.) For the reasons stated herein, the undersigned respectfully recommends that the Motion for Settlement Approval be denied.

## BACKGROUND

In a Complaint filed June 23, 2016, Plaintiff alleges that Defendants, who owned and operated "about four buildings," employed Plaintiff as a "handyman" to perform maintenance and repairs in those buildings. (Compl. ¶¶ 14-15, Dkt. 1.) He alleges that he was employed from approximately December 2013 to April 15, 2016, that his regular rate of pay was about $12.70 per hour, and that he "worked approximately 60-80 hours each week, up to 7 days a week." (*Id.* ¶¶ 10, 16, 18.) Plaintiff alleges that Defendants deducted about $1,000 a month from his wages to reflect

the value of rent on an apartment in which he was required to live. (*Id.* ¶ 21.) The Complaint asserts violations of the overtime compensation provisions of the FLSA, NYLL, and NYCRR, violation of regulations under 12 NYCRR § 142-2.2, and claims under NYLL §§ 190, 191, 193, 195 and 198. Plaintiff sought unpaid wages, liquidated damages, prejudgment interest, maximum recovery for violations of notice requirements, reasonable attorney's fees, and costs of the action.

Defendants contend that Plaintiff only worked two hours a day and received $14,400 a year in addition to rent-free occupancy of an apartment. (*See* Declaration of Paul E. Kerson ("Kerson Declaration" or "Kerson Decl.") ¶¶ 2-3, Dkt. 22-1.) With their Answer, Defendants filed a counterclaim, alleging that Plaintiff knowingly and maliciously filed a false complaint. (Answer ¶¶ 13-15, Dkt. 7.) Defendants sought damages on their counterclaim, including costs, interest, disbursements and attorney's fees. (*Id.* at 4.)

The parties were referred to Court-annexed mediation, which resulted in a Stipulation of Settlement dated December 20, 2016 (the "Stipulation"). (*See* Order dated Nov. 3, 2016; Stipulation, Dkts. 15, 22-2.) The Stipulation is two pages long, handwritten, and signed by Plaintiff, Plaintiff's counsel, Defendant Grant (individually and on behalf of Defendant Sterling-Grant Inc.), Defendants' counsel, and the mediator. (*See* Stipulation.) The Stipulation states:

> It is hereby stipulated + agreed by and between the parties herein + their respective attorneys that this matter is settled upon the following terms and conditions:
>
> (1) [Defendants] offer judgment in the sum of $22,000 inclusive of all costs, interest + attorney's fees + penalties.
> (2) Plaintiff accepts said offer of judgment.
> (3) Parties to exchange mutual Blumberg form general release.
> (4) Payment as follows: $10,000 within 14 days, $5000 within 60 days, and $5000 within 60 days, and $2000 within 90 days.
> (5) Payment to be made out to Abdul K. Hassan Law Group PLLC as attorney.
> (6) Parties consent to proceed before U.S. Magistrate Judge Peggy Kuo.
> (7) Any and all claims that could have been raised herein are dismissed with prejudice.
> (8) Offer of Judgment form to be served by [Defendants'] attorney on [Plaintiff's] attorney by 12/23/16.
> (9) First payment to be made within 14 days of Plaintiff's written acceptance of

        Offer of Judgment.
(10) In the event of default, plaintiff will provide [Defendants'] attorney with Notice in writing, with a 10 day period to cure the default. If default not cured within this time period, Plaintiff shall have the right to enter judgment against [Defendants] for $40,000 minus any payments already made.
(11) Parties agree to stay away from each other and to stay away from each other's property.[1]

(*Id.*)

On December 22, 2016, an Offer of Judgment was served on Plaintiff ("December 22 Offer of Judgment"), stating in its entirety: "The Defendants, Sterling-Grant Inc. and Everita Grant offers [sic] to allow judgment to be taken against defendants by plaintiff for $22,000, without costs, interest, or attorney's fees." (Dkt. 14.) Plaintiff did not accept this Offer.

On January 11, 2017, the undersigned held a Fairness Hearing on the Stipulation pursuant to *Cheeks*. (*See* Mins. of Jan. 11, 2017 Telephone Fairness H'rg; Tr. of Jan. 11, 2017 Telephone Fairness H'rg, Dkt. 26.) During the hearing, Plaintiff's counsel explained that Plaintiff had rejected the December 22 Offer of Judgment because it did not accurately reflect the parties' agreement. The December 22 Offer of Judgment would have entitled Plaintiff "to the [$22,000 settlement amount] plus attorney's fees," contrary to the Stipulation, which provided for a settlement of $22,000 *including* attorney's fees. (*Id.* at 8:4-8:18.) He disclosed that he had warned Defendants' counsel of the potential consequences of the disparity between the two documents, saying "look, the way this is worded you're going to be in trouble with your client because we will be entitled to attorney's fees in addition to the [settlement] amount [as set forth in the December 22 Offer of Judgment]." (*Id.* at 8:15-8:17.) The parties confirmed that they intended the $22,000 settlement amount to include attorney's fees. (*Id.* at 8:19-9:1.)

Plaintiff's counsel also informed the undersigned that under the terms of the agreement,

---

[1] This last provision appears to be separately initialed by Defendant Grant, Defendants' counsel, and Plaintiff. (*See* Stipulation at 2, Dkt. 22-2.)

3

Plaintiff would seek attorney's fees of one-third of the settlement amount "or the hourly fee[,] whichever is *higher*." (Tr. of Jan. 11, 2017 Telephone Fairness H'rg at 9:2-9:7) (emphasis added.) He stated that if the Court conducted *Cheeks* review, Plaintiff would need to "extensively" brief the question of whether counsel could receive attorney's fees higher than one-third of the settlement amount, which might lead to "need[ing] a higher settlement amount because part of the deal here was that we wouldn't have to go through this process and spend the time on it." (*Id.* at 12:20-14:6.) Plaintiff's counsel indicated that if attorney's fees were to be limited to "a one-third rule there's going to be litigation involved because I think it's totally baseless . . . . We're going to litigate that and it's not going to be a quick process." (*Id.* at 15:17-15:21.)

Plaintiff's counsel further argued that the Court had no authority to conduct a *Cheeks* review because, at the request of Plaintiff's counsel, Defendants had just served a second offer of judgment under Rule 68 of the Federal Rules of Civil Procedure ("Federal Rules"), which Plaintiff intended to accept. (*Id.* at 15:9-17:8.) The undersigned informed counsel that *Cheeks* review was appropriate under the circumstances and ordered Plaintiff's counsel "to file a letter identifying what portion of the settlement amount is being allocated to Plaintiff and to Plaintiff's counsel, and to file [counsel's] billing records and disbursements pertaining to this case" by January 17, 2017. (*See* Mins. of Jan. 11, 2017 Telephone Fairness H'rg.)

Immediately after the telephone conference, Plaintiff's counsel filed a Notice stating that Plaintiff had accepted Defendants' Offer of Judgment dated January 11, 2017 ("January 11 Offer of Judgment"), which states, in relevant part: "Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendants offer to allow Judgment to be entered against them in this action in the amount of $22,000.00, *inclusive of all of Plaintiff's claims for relief, attorney's fees and costs*, to be paid to Plaintiff's counsel as follow[s.]" (*See* Acceptance of Rule 68 Offer of Judgment, Dkt. 17; Rule 68 Offer of Judgment, *id.* at 2) (emphasis added.) Also on January 11, 2017, Plaintiff's counsel filed a

4

letter requesting entry of judgment pursuant to Rule 68. (*See* Letter from Abdul K. Hassan dated Jan. 11, 2017, Dkt. 19.) Plaintiff's counsel did not file his billing records and disbursements.

On January 17, 2017, Defendants' counsel filed a letter arguing that the Stipulation should be approved as fair and reasonable pursuant to *Cheeks*. (*See* Letter from Paul E. Kerson dated Jan. 17, 2017, Dkt. 21.)

On January 24, 2017, Judge Amon ordered that "Under the unusual circumstances of this case, where the plaintiff filed an acceptance of an Offer of Judgment, but there appears to be in fact a negotiated settlement, the Court finds that *Cheeks* review is appropriate." (Referral Order dated Jan. 24, 2017.) Judge Amon referred the Stipulation to the undersigned for *Cheeks* review and a report and recommendation. (*Id.*)

In advance of the Fairness Hearing, the undersigned directed the parties to file "a joint motion for settlement approval that includes: 1) any further documentation of the parties' settlement agreement; 2) a letter explaining how the settlement agreement, including attorneys' fees, comports with existent case law; and 3) the billing records and disbursements of Plaintiff's counsel." (Order dated Jan. 25, 2017.)

Defendants' counsel filed a motion for settlement approval. (*See* Motion for Settlement Approval, Dkt. 22.) Plaintiff's counsel, by contrast, filed a letter arguing that the Stipulation should not be approved under *Cheeks*. (*See* Letter from Abdul K. Hassan dated Feb. 1, 2017, Dkt. 23.) While challenging case law within the Second Circuit, *see e.g., Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 230-31 (S.D.N.Y. 2016), that limits "reasonable" attorney's fees in straightforward FLSA cases to one-third of the settlement amount, the letter also stated that Plaintiff's counsel would accept limiting the attorney's fees to one-third of the settlement amount after costs "if certain provisions are eliminated and defendants pay plaintiff an additional acceptable sum in wages after subsequent negotiations." (Letter from Abdul K. Hassan dated Feb. 1, 2017 at 2.) Again, counsel

5

did not file his billing records and disbursements as ordered.

A Fairness Hearing was held on February 7, 2017. (*See* Mins. of Feb. 7, 2017 Telephone Fairness H'rg; Tr. of Feb. 7, 2017 Telephone Fairness H'rg, Dkt. 25.) During the hearing, Plaintiff's counsel argued that the settlement amount of $22,000 was "unreasonable under *Cheeks*," and that Plaintiff had agreed to that amount on the assumption that there would be no *Cheeks* review because "there's a difference between a reasonableness outside of *Cheeks* and under *Cheeks*." (*Id.* at 6:8-6:18; *see also id.* at 8:3-8:17.) Defendant's counsel objected to the possibility of increasing the settlement amount, because "to say the defendant should pay more money (after reaching a settlement through mediation) is contrary to the whole idea of the court's mediation program." (*Id.* at 3:3-3:6.)

## DISCUSSION

### I. Fairness Review of FLSA Settlements Generally

The Second Circuit has found that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL [United States Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. Before approving these settlements, the Court must be satisfied that they are "fair and reasonable." *Flores v. Food Exrpess Rego Park, Inc.*, No. 15-CV-1410 (KAM)(SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In making this determination, the court considers the "bona fides of the [parties'] dispute, including (1) the plaintiff's range of possible recovery; (2) the seriousness of the litigation risks faced by the parties; (3) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses that would be incurred if they proceeded with litigation; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) whether there is fraud or collusion." *Lopez v. 41-06 Bell Blvd. Bakery LLC*, No. 15-CV-6953 (SJ)(PK), 2016 WL 6156199, at *1 (E.D.N.Y. Oct. 3, 2016), *R&R adopted*, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016) (quoting *Wolinsky*, 900 F. Supp. 2d at

6

335) (internal quotation marks omitted).

The Court must also determine whether any attorney's fees provided for under the settlement are "reasonable." *Flores*, 2016 WL 386042, at *1. A one-third portion of the settlement amount is "generally accepted by courts in this district for attorneys' fees in FLSA cases." *Lopez*, 2016 WL 6156199, at *3; *Abrar v. 7-Eleven, Inc.*, No. 14-CV-6315 (ADS)(AKT), 2016 WL 1465360, at *3 (E.D.N.Y. Apr. 14, 2016); *Gurung*, 226 F. Supp. 3d at 230 ("Barring unusual circumstances not present on the record in this case, courts in [the Southern District of New York] have declined to award fees constituting more than one-third of the total settlement amount in FLSA actions.") (citing cases). Courts in the Second Circuit "have often rejected settlement agreements that provide for fees" above that proportion, and have even reduced fees to below one-third where appropriate. *Flores*, 2016 WL 386042, at *4 (reducing attorney's fees and costs from 40 to approximately 35 percent of total settlement); *Guzman v. Joesons Auto Parts*, No. 11-CV-4543 (ETB), 2013 WL 2898154, at *5 (E.D.N.Y. June 13, 2013) (collecting cases and awarding attorney's fees of 20% and 25%).

Courts do not reduce attorney's fees mechanistically. The central policy aim underpinning *Cheeks*—protecting FLSA plaintiffs—guides the review of attorney's fees, in light of the risk that "the interest of plaintiffs' counsel in counsel's own compensation will adversely affect the extent of the relief counsel will procure for the clients." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) (citation omitted). Courts thus require contemporaneous billing records to cross-check the reasonableness of the fees requested, and "may deny fees altogether or reduce the award" in the absence of adequate supporting documentation. *Perez v. Jasper Trading, Inc.*, No. 05-CV-1725 (ILG)(VVP), 2007 WL 4441062, at *10 (E.D.N.Y. Dec. 17, 2007); *see also New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (mandating submission of contemporaneous billing records for all fee applications within the Second Circuit).

Under *Cheeks*, the Court must also beware of settlement terms that are "abus[ive]" or

7

otherwise "in strong tension with the remedial purposes of the FLSA." *Cheeks*, 796 F.3d at 206. Such terms include, *inter alia*, confidentiality provisions, non-disclosure provisions, non-disparagement clauses, and overbroad general releases. *See, e.g., Lopez*, 96 F. Supp. 3d at 174-78; *Gurung*, 226 F. Supp. 3d at 228-29; *Flores*, 2016 WL 386042, at *2.

### a. Parties' Arguments

Defendants urge the Court to approve the Stipulation as fair and reasonable. They point to the "significant evidentiary problems" faced by both parties and characterize the central dispute of Plaintiff's hours worked as "a classic 'he said-she said' situation." (*See* Kerson Decl. ¶ 10.) They also cite the mediation process during which there was "considerable discussion" in joint and separate sessions with the mediator. (*Id.* ¶ 4.) Finally, they note the desire to avoid additional legal fees and expenses that would be incurred if the litigation continued. (*Id.* ¶ 12.)

Plaintiff argues that the Stipulation is not fair and reasonable under *Cheeks*, "even though it would be acceptable outside of *Cheeks*." (Letter from Abdul K. Hassan dated Feb. 1, 2017 at 1.) He contends that "*Cheeks* approval may be possible if defendants pay plaintiff more money to cover his wages, and if certain provisions like the general release, and the 'stay away' provision are removed." (*Id.*) Plaintiff admits that he and his counsel signed the Stipulation and agreed to its terms. (Tr. of Feb. 7, 2017 Telephone Fairness H'rg at 6:9-6:18, 8:5-8:13, 9:15-9:22.) Nevertheless, he now contends that the terms he agreed to are, in fact, unreasonable. He does not cite any explanation for his agreeing to the "unreasonable" terms of the Stipulation other than that the parties did not seek *Cheeks* review. (*Id.*)

### b. Analysis

As Judge Amon noted in referring this matter for review under *Cheeks*, this case poses "unusual circumstances" in that the parties purported to resolve the case through acceptance of an Offer of Judgment, "but there appears to be in fact a negotiated settlement." *See also Rodriguez-*

8

*Hernandez v. K Bread & Co., Inc.*, No. 15-CV-6848 (KBF), 2017 WL 2266874 (S.D.N.Y. May 23, 2017).  Since the referral, the case has become even more unusual.  Notwithstanding that Plaintiff and his counsel signed the Stipulation on December 20, 2016, he now disavows the terms of that document and asks the Court to find those agreed-upon terms unreasonable.  In support of that request, he contends that the Stipulation terms were premised on there being no *Cheeks* review by the Court.  Defendant, in seeking court approval of the Stipulation, appears to be requesting, in effect, that the agreement be enforced against Plaintiff.

Thus, the threshold question posed is whether there is at this point a settlement to be reviewed or enforced.  The undersigned concludes that there is not.

FLSA plaintiffs "lack capacity to enter into a binding agreement . . . that is not conditioned on" approval by the court or Department of Labor.  *See Mei Xing Yu v. Hasaki Rest., Inc.,* 319 F.R.D. 111, 116 (S.D.N.Y. 2017) (quoting *Sanchez v. Burgers & Cupcakes LLC*, No. 16-CV-3862 (VEC), 2017 WL 2171870, at *2 (S.D.N.Y. Mar. 16, 2017)).  FLSA settlements are thus not binding until they pass *Cheeks* review.  Here, the parties tried to evade that review through an agreement to use an offer and acceptance of judgment.  However, such a procedure does not automatically take the matter outside the purview of *Cheeks*.  In the absence of a definitive ruling by the Second Circuit on the issue, courts have reached differing conclusions on whether offers and acceptances under Rule 68 would nevertheless be subject to *Cheeks* review.[2]  In any event, it is clear that the parties cannot enter

---

[2] *See Anwar v. Stephens,* No. 15-CV-4493 (JS)(GRB), 2017 WL 455416, at *1 (E.D.N.Y. Feb. 2, 2017) (the "majority of district courts in this Circuit have held that judicial approval is not required for Rule 68 offers of judgment" in FLSA cases) (collecting cases); *but see Mei Xing Yu v. Hasaki Rest., Inc.*, 319 F.R.D. 111, 114 (S.D.N.Y. 2017) ("FLSA claims fall within the narrow class of claims that cannot be settled under Rule 68 without approval by the court (or the DOL)"); *Lopez v. Overtime 1st Ave. Corp.*, No. 15-CV-820 (RJS), 2017 WL 1737657, at *3 (S.D.N.Y. May 2, 2017) (same); *Sagardia v. AD Delivery & Warehousing, Inc.*, No. 15-CV-677 (CBA)(RLM), 2016 WL 4005777, at *1 (E.D.N.Y. July 25, 2016) (assuming, without deciding, that *Cheeks* applies to Rule 68 offers of judgment); *Alonso v. LE Bilboquet NY, LLC*, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017) (reviewing an accepted Rule 68 offer of judgment in an FLSA case and finding the parties' "settlement" to be fair and reasonable, where only *defendants* had requested that the court "review and approve the proposed Rule 68 judgment"); *Sanchez v. Burgers & Cupcakes LLC*, No. 16-CV-3862

into an *agreement* to use Rule 68 to avoid judicially mandated review.[3]

Because judicial approval is a condition of FLSA settlements, the Stipulation was not final on the date of its execution. It can only become final when approved under *Cheeks*. *See Benjamin v. Jacobson*, 172 F.3d 144, 157 (2d Cir. 1999) (where an agreement is "conditional on approval by the federal court, there is no enforceable agreement if the condition fails"). That process had not yet occurred when Plaintiff argued against approval of the Stipulation, evidencing his desire not to be bound by its terms. In the course of considering whether the Stipulation is fair and reasonable, the Court cannot ignore Plaintiff's disavowal of its terms, or his arguments that the intent of the parties in reaching agreement on the terms of the Stipulation has been stymied, even if that intent was to evade judicial review.

Accordingly, the Stipulation is not a binding contract that can be enforced over Plaintiff's current objections. I reach this conclusion reluctantly, given that Plaintiff's counsel offers no information or argument as to why the settlement amount agreed to by all parties after a neutral mediation should now be found *unreasonable* by the Court. For example, there is no indication that Plaintiff "felt pressured" to accept an out-of-court settlement because he was homeless, or was unemployed and "desperate for any money" he could find. *See Cheeks*, 796 F.3d at 206 (highlighting concerns which underscore "why judicial approval in the FLSA setting is necessary"). Applying the *Wolinsky* factors, it does not appear that the $22,000 agreed upon in the Stipulation is unfair or unreasonable.

---

(VEC), 2017 WL 2171870, at *2 (S.D.N.Y. Mar. 16, 2017) ("An FLSA plaintiff may not validly 'accept' a Rule 68 offer without Department or Court approval under *Cheeks*.").

[3] An agreement to accept a Rule 68 offer would undermine the purpose of such offers, which are not to be drafted based on the parties' mutual input. Rule 68 "shifts the risk of going forward with a lawsuit to the [plaintiff], who becomes exposed to the prospect of being saddled with the substantial expense of trial." *Glenn v. Fuji Grill Niagara Falls, LLC*, No. 14-CV-380S (WMS), 2016 WL 1557751, at *2 (W.D.N.Y. Apr. 18, 2016) (internal citation omitted). A Rule 68 offer is "non-negotiable; it is either accepted, in which case it is automatically entered by the clerk of the court, or rejected, in which case it stands as the marker by which the plaintiff's results are ultimately measured." *Id.* (internal citation omitted).

Plaintiff's argument that the settlement amount is only reasonable on the condition that there be no *Cheeks* review is based on the proposition that "there's a difference between a reasonableness outside of *Cheeks* and under *Cheeks*." (Tr. of Feb. 7, 2017 Telephone Fairness H'rg at 6:17-6:18.) This proposition finds no support in law. A court tasked with considering whether a settlement of FLSA claims with prejudice is fair and reasonable applies the standards set forth in *Cheeks*. There is no other standard to be applied. To create different standards based on whether or not a District Court will review the settlement would undermine "the FLSA's primary remedial purpose" to "prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207 (citation omitted). The proffered basis for this distinction also has no merit. When questioned on this distinction during the Fairness Hearing, Plaintiff's counsel stated, "Because outside of *Cheeks* [Plaintiff] can agree to anything. He can waive his wages," whereas, "The plaintiff is not free to waive wages under *Cheeks*." (Tr. of Feb. 7, 2017 Telephone Fairness H'rg at 6:11-6:12, 8:15-8:17.) This is not true. The factors set forth in *Wolinsky* permit a nuanced analysis of the substantive and procedural considerations leading to a settlement, including the reasons a plaintiff may want to settle for an amount below the wages that he or she believes are owed.

The purported reason for Plaintiff's requiring a higher amount under *Cheeks* is that court review would necessitate incurring additional attorney's fees; however, Plaintiff's counsel has stated on the record that the additional litigation costs would actually relate to the need to litigate attorney's fees. Under normal circumstances, the Court's review under *Cheeks* would likely not have required extensive additional attorney's fees.

Nevertheless, the public policy concerns raised in *Cheeks* would be ill-served by forcing Plaintiff to adhere to the Stipulation when he has indicated through counsel that he no longer wishes to be bound by its terms. *See Litchfield Capital, LLC v. BNY Clearing Servs. LLC*, No. 05-CV-3218

11

(BSJ), 2011 WL 4914999, at *4 (S.D.N.Y. Oct. 14, 2011) ("courts will decline to enforce agreements as a matter of public policy where enforcement would undercut important regulatory purposes") (citing *In re Weis*, 605 F.2d 590, 596 (2d Cir. 1978)).

    c.    **Other Terms of the Stipulation**

In the event that the Stipulation is nonetheless considered binding, or the parties submit a further agreement for the Court to review under *Cheeks*, the undersigned considers Plaintiff's arguments that other parts of the Stipulation are not fair and reasonable.

    *1. General Release*

The third paragraph of the Stipulation states, "Parties to exchange mutual Blumberg form general release." No such "general release" was attached to the Stipulation of Dismissal, but counsel clarified at oral argument that the scope of such a release concerns "any and all claims" and was meant to effectuate the parties' agreement that "they have no further claims against each other." (Tr. of Feb. 7, 2017 Telephone Fairness H'rg at 12:22-14:13.) They confirmed that their intention was to release "any and all claims known and unknown from the beginning of time including but not limited to Wage and Hour claims." (*See id.* at 16:4-16:11.) Defendants' counsel stated that there had been a landlord-tenant proceeding in Kings County Civil Court between the parties, which was resolved prior to December 20, 2016, and that Defendants were "concerned that the landlord/tenant case not come back." (*See id.* at 16:25-17:17.)

The Stipulation incorporates an overbroad general release. *Cheeks* cited favorably *Nights of Cabiria*, which refused to approve a settlement agreement with a general release "purport[ing] to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *See Nights of Cabiria*, 96 F. Supp. 3d at 181; *Cheeks,* 796 F.3d at 206. Following *Cheeks* and *Nights of Cabiria*, judges in this District have scrutinized such overbroad releases in settlements of FLSA claims. *See Castagna v. Hampton Creek,*

12

*Inc.*, No. 16-CV-760 (SJF)(AYS), 2016 WL 7165975, at *1 (E.D.N.Y. Dec. 6, 2016); *Flores*, 2016 WL 386042, at *2. Further, courts have held that even a general release that is *mutual*, in that the employer's claims against the employee are also released, does not warrant approval "absent a sound explanation for how this broad release benefits the plaintiff employee." *Gurung*, 226 F. Supp. 3d at 229; *see also Flores-Mendieta v. Bitefood Ltd.*, No. 15-CV-4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016).

The "mutual Blumberg form general release" that the parties incorporated into their Stipulation is overbroad and cannot be approved under *Cheeks* and its progeny. Defendants' concerns may have warranted inclusion of language specifically stating that Plaintiff would not assert or reinstate any landlord-tenant claims against Defendants, and Plaintiff may benefit from the release of Defendants' counterclaims. However, those limited concerns do not justify adopting a release that encompasses all possible claims rather than the known specific claims. *But see Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015) (approving mutual general release, noting that employee should know other potential claims and properly value them).

Because the "Blumberg form" is not limited to wage-and-hour claims and other specifically negotiated releases, that portion of the Stipulation is not in accordance with *Cheeks* and its progeny.

### 2. The "Stay Away" Provision

Plaintiff's counsel argues that the "stay away" provision in the Stipulation is improper under *Cheeks* because "any provision requiring plaintiff to give up his right and freedom of movement and stay away from defendants and their property is a release of right that has nothing to do with the overtime wage claims in this action." (Letter from Abdul K. Hassan dated Feb. 1, 2017 at 5.) While unrelated to the wage-and-hour claims, a stay away order is not inherently improper under *Cheeks* if it is fully negotiated and clearly circumscribed. That appears to be the case here.

Plaintiff no longer resides on Defendants' premises, and both parties are bound by the "stay away" provision. This provision was also initialed by the parties, indicating that it was specifically negotiated. Thus, the inclusion of this term in the parties' settlement is not inconsistent with the remedial purposes of the FLSA or the concerns articulated in *Cheeks*.

### d. Attorney's Fees

The Stipulation is silent as to how costs and attorney's fees will be apportioned between Plaintiff and his counsel, although it defines the settlement amount to include attorney's fees.

Plaintiff's counsel has twice ignored the Court's order that he file copies of his contemporaneous billing records in this case to support a "lodestar" based on his hourly rate and time spent on this case. (*See* Mins. of Jan. 11, 2017 Telephone Fairness H'rg; Order dated Jan. 25, 2017.)

Without being able to review the contemporaneous records that show Plaintiff's counsel's work on this case, the time he expended, and his hourly rate, it is difficult for the undersigned to assess the reasonableness of allocating any amount to Plaintiff's counsel out of any future settlement. *See Johnson v. Equity Leasing Finance II, Inc.*, No. 16-CV-1454 (WHP), 2016 WL 6493157, at *2 (S.D.N.Y. Oct. 4, 2016) ("Counsel has not submitted 'contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done,' so the Court again lacks any information from which it can conclude that the fees in relation to the settlement are fair and reasonable.") (quoting *Wolinsky*, 900 F. Supp. 2d at 336). Thus, if Plaintiff's counsel continues to refuse to file his contemporaneous billing records in this case, the undersigned recommends that he not be awarded any fees. *See Flanagan v. Am. Plaster, Inc.*, No. 10-CV-1867 (ADS)(WDW), 2011 WL 2259763, at *2 (E.D.N.Y. May 6, 2011), *R&R adopted*, 2011 WL 2200257 (E.D.N.Y. June 2, 2011) ("the court must deny the [ ] request for an award of attorneys' fees due to [the] failure to properly document the application [with contemporaneous time records]"); *see also*

14

*Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications").

Review of attorney's fees is especially important when there is an attempt to evade *Cheeks* review through use of a Rule 68 offer and acceptance of judgment. One of the protections afforded under *Cheeks* is judicial review of the reasonableness of attorney's fees. This review disappears when the Rule 68 offer includes such fees, rendering a fee application unnecessary. Circumventing judicial review exposes plaintiffs to the risk of excessive attorney's fees that cut into the settlement amount actually received. Such a risk is not frivolous. Plaintiff's counsel sought one-third of the original settlement amount or his hourly rate, "whichever is higher" (Tr. of Jan. 11, 2017 Telephone Fairness H'rg at 9:4-9:5), and later expressed a willingness to accept attorney's fees of one-third the settlement amount, consistent with case law in this Circuit, *only* if the overall settlement amount were increased. Plaintiff's counsel also explicitly declared an intent to seek higher fees and to "extensively" litigate against the established practice of reviewing attorney's fees under *Cheeks*, subjecting his client to additional costs that provide Plaintiff little or no value. The delay caused by such conduct needlessly prolongs Plaintiff's waiting period to receive settlement funds, as he endures continuing motion practice despite having reached an agreement with Defendants. It also drives up attorney's fees for Defendants, possibly making fewer resources available to Plaintiff. Plaintiff's counsel's repeated objections to the review of attorney's fees and refusal to submit time records in defiance of multiple court orders contribute to this concern, which has been raised by other courts regarding the focus on attorney's fees by this same plaintiff's counsel. *See, e.g., Seck v. Dipna Rx, Inc.*, No. 16-CV-7262 (PKC), 2017 WL 1906887, at *3 (S.D.N.Y. May 8, 2017) (rejecting Mr. Hassan's request for attorney's fees of 52% and noting that counsel's possibly retaliatory conduct in that case "may well be a breach of a lawyer's duty of loyalty in placing the lawyer's interest above that of his client"); *Gurung*, 226 F. Supp. 3d at 229-31 (denying approval of agreement

15

allocating Mr. Hassan "unjustified, and unreasonably high" attorney's fees of 57% and rejecting counsel's implication that reducing the attorney's fees would "unjustly enrich" Plaintiff).

At least one other court in this Circuit has expressed concern that attorney's fees may be motivating plaintiff's counsel's attempt to evade judicial scrutiny of FLSA settlements. In *Rodriguez-Hernandez v. K Bread & Co., Inc.*, the court concluded that the parties "mischaracterized" a settlement as a Rule 68 offer in order to evade *Cheeks*, noting its suspicion that "the settlement was likely mischaracterized because of a desire by plaintiff's counsel to receive an unreasonably high attorney's fee award and shield such award from review by this Court." 2017 WL 2266874, at *1 (reviewing agreement under *Cheeks* and reducing attorney's fees.) Here, Plaintiff's counsel's own statements support a similar inference. While prior cases on the protective purpose of the FLSA have focused on the power differential between plaintiffs and defendants, there is also the potential for abuse by attorneys of their FLSA clients.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Settlement Approval be denied.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Dated:  Brooklyn, New York            **SO ORDERED:**
        August 9, 2017

                                              *Peggy Kuo*
                                              PEGGY KUO
                                              United States Magistrate Judge